No. ——

First Circuit

---

FOSTER v. T. & P. RY. CO.

---

(January 7, 1927. Opinion and Decree.)
(February 12, 1927. Rehearing Refused.)

---

(*Syllabus by the Editor*)

1. Louisiana Digest—Appeal—Par. 625; Railroads—Par. 88.

The finding of the trial court that the railroad used ordinary care to avoid

the killing of live stock, notwithstanding Act 70 of 1886, which throws the burden of proof on the railroad, being clearly correct, is affirmed.

Appeal from the Parish of St. Landry. Hon. B. H. Pavy, Judge.

Action by J. C. Foster, Jr., against Texas & Pacific Railway Company.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

John W. Lewis, of Opelousas, attorney for plaintiff, appellant.

Peterman, Dear & Peterman, of Alexandria, attorneys for defendant, appellee.

LECHE, J. Plaintiff appeals from a judgment refusing his demand for one thousand and twelve and 50-100 dollars, value of a horse and three mules killed by a train of defendant company.

The killing occurred about two o'clock in the morning of November 15, 1925, near the station of "Morrow", a village in the parish of St. Landry. The main line of the Texas & Pacific Railway lies along the edge of the village. The fast through passenger train of the defendant company, which ran into the animals, is due at that station at 2:10 in the morning, but under its regular schedule it does not stop at Morrow. On this particular occasion it was dark, it was very foggy and raining, and it was impossible for the locomotive engineer to see farther than about 100 feet ahead. These weather conditions are sworn to by the engineer, the fireman and four other members of the train crew, and their testimony is unimpeached. The engineer says that he only saw two heads of live stock and, at the time, they were about seventy-five feet ahead of the locomotive. He further says that, owing to the weight of the train, consisting of eight coaches, and the speed at which he was running, it was impossible for him to have stopped in time to avoid striking these animals. The speed at which the train was being run, forty-five miles per hour, was five miles slower than permitted by the rules of the railway company.

Of course, plaintiff does not contend that a passenger train under these weather conditions should only be run at such speed as would enable the engineer, on seeing obstructions on the track, to stop in time to avoid running into them, but he says that, on other occasions, cattle and stock had been killed about this same place and, for that reason, the engineer should have approached carefully enough to have avoided killing his mules. It sems to us that it would be unreasonable to require a railroad company to slow down during heavy fogs and delay its trains at every point along its line, where cattle or live stock might at some time in the past have been killed. Such a regulation would almost paralyze passenger traffic on railroads.

Both the fireman and engineer say that the weather conditions were such that they could not see over 100 feet ahead of the locomotive, that they saw the mules about 75 feet ahead, and the fact that neither one of them was asked whether they were on the lookout for stock on the track, and that nothing was said as to whether they were or were not on the lookout, can have no bearing under existing conditions.

Plaintiff also contends that the station agent who, before the arrival of the train, had caught a glimpse of a gray mule going and disappearing behind a box car on a side track, about 100 feet away, beyond the station, should have flagged the train and thereby have avoided any danger of

killing the animal. The agent had no reason to suppose that the mule would come up on the main track, and we do not believe that, under existing conditions, it was incumbent upon him to have attempted to signal and stop the train. The agent saw the mule about thirty seconds before the train went by, and the signal would have appeared too late to enable the engineer to stop in time to avoid the accident.

The jurisprudence is that a railroad company is only required to use ordinary care to avoid killing live stock by its trains. The testimony in the record justifies the belief that the defendant did exercise ordinary care and that it has cleared itself of the negligence which the statute imputes to it in such cases.

The trial judge so found and we concur in his finding.