SAVOY, Judge.
This is an action in tort for the value of two cows which were killed by defendant’s train about two miles north of Ville Platte in Evangeline Parish, Louisiana, on November 24, 1964. Plaintiff alleged that his animals were struck and killed because of the negligence of defendant’s agents and employees in charge of the train in proceeding at an excessive rate of speed, in failing to keep a proper lookout, in failing to keep the train under adequate control, in failing to give an adequate warning, and in failing to slow down or stop in time to avoid the accident. Plaintiff alleged the defendant failed to maintain fences and cattle guards around its right-of-way, and claims specifically the benefits of LSA-R.S. 45:504, as amended.
The defendant filed an answer in which the material allegations of plaintiff’s petition were denied, and it was alleged in the alternative that the cows were killed *82 through no fault or negligence on the part of the defendant, its agents or employees, that the defendant’s right-of-way was properly and securely fenced, that the cows were seen by defendant’s train crewmen at the first moment that they could reasonably be seen by such crewmen keeping an adequate and proper lookout, that warnings were sounded, and that every means and precaution available and consistent with the safety of the train and its crew were exercised to avoid striking the animals, but to no avail.
After trial on the merits, the district court rendered judgment for plaintiff in the amount of $460.00. From this adverse judgment the defendant has prosecuted a suspensive appeal to this Court.
Defendant maintains that the district court erred in finding any fault or negligence on the part of the defendant’s agent or employees. It is submitted that there is no law requiring defendant to fence its right-of-way, or to keep its property clear of brush and weeds, and that the evidence shows that the employees of defendant were keeping a reasonable lookout, that they saw the cow or cows at the earliest possible moment under the facts of the case and did everything possible to avoid the accident, but that there was nothing that could be done to save the cows.
Plaintiff maintains that since the defendant had not fenced the area where the cows were killed, that LSA-R.S. 45:504 places the burden on defendant to show itself to be free from any fault or negligence in order to exculpate itself from liability. It is submitted that defendant did not carry this burden of proof, but rather, that the evidence shows that the employees of defendant were guilty of gross negligence in failing to keep a proper lookout. It is further maintained that the defendant was negligent in allowing weeds to grow so tall on its right-of-way as to prevent its employees from observing cattle on the tracks in time to avoid striking them.
The record shows that the plaintiff’s two cows were struck by the defendant’s train in the afternoon of November 24, 1964, on a clear day at a point approximately two miles north of Ville Platte in Evangeline Parish. The train consisted of a diesel engine with approximately fifteen freight cars. The train was. proceeding northerly at approximately 25 miles per hour and the cows were struck after the train entered a curve to its left. The curve in the tracks starts near a dirt road crossing. To the north of the crossing is located a cotton oil mill. There is fencing in the area, and plaintiff generally keeps his cattle within these fences. Plowever, the defendant did not build or maintain fences along its right-of-way in the area involved, and the area is open for cattle to graze. The area within the right-of-way was grown up in brush and weeds as high as three to six feet in places.
There were three men in the cab of the diesel engine. Seated on the right side was the engineer, who testified that he never did see the cow or cows. He stated that when the fireman yelled “Cow” he blew the whistle a short blast as fast as he could, hoping that the cow would get off the track. He testified he did not apply the brakes because of the danger of derailing in a curve and because he knew that in this area a cow could not be seen at a sufficient distance for him to stop the train before hitting it, assuming the cow was on the tracks. The fireman testified he was keeping a close lookout, but because of the growth near the tracks and the curve in the tracks, he did not see the cow until the train was within two hundred to two hundred fifty feet from the cow. At that time the cow was on the tracks and it appeared to be hobbling along in the same direction as the train. He testified he hollered to the engineer, and that the engineer applied the brakes, but that it was too late, and the speed of the train was resumed. He testified they do not usually stop when a cow is hit. The brakeman, who was seated behind the fireman on the left side of the *83 train in the cab of the diesel, testified that as they came into the curve, he saw the cow on the tracks less than one hundred yards away, possibly two hundred feet away, and the cow was running down the tracks. He testified the engineer had blown the usual whistle signal for a crossing, and that when the fireman yelled “Cow”, the engineer applied the brakes, but then soon released them, when the fireman said it was too late.
The cows were found after the incident on the west side of the tracks, within the curve. A registered polled hereford cow, five years of age, was found dead. The other, which was part brahma and part common cow, was severely injured, and died approximately two or three days thereafter.
The law applicable to injury or killing of livestock by railroad companies is found at LSA-R.S. 45 :501-45:504. In this case, since the defendant had not erected and maintained fences and cattle guards, and the area was open for cattle to graze, the burden of disproving negligence on its part is imposed upon defendant by LSA-R.S. 45:504, to-wit:
“In suits against railroad companies for the loss of stock killed or injured by them, it is sufficient, in order for the plaintiff and owner to recover, to prove the killing or injury, unless it is shown by the defendant company that the killing or injury was not the result of fault or carelessness on their part or the negligent or indifferent running or management of their locomotive or train.”
In the case of Daughdrill v. Texas and New Orleans Railroad Company, (La.App., 1 Cir., 1945), 20 So.2d 644, the court interpreted that provision as follows, to-wit:
“It is now settled that the failure to maintain fences and cattle guards in good condition is not negligence on the part of railroad, but it only shifts upon it the burden of showing that it and its employees werd guilty of no fault or negligence in suits for killing of stock on the tracks. Furthermore, no law requires railroad companies tO' fence their tracks or keep up fences,, cattle guards, or gates they have built. We find no merits in plaintiff’s contention.”
The issue before us in this case is whether or not the district court was manifestly erroneous in its finding that the defendant had not discharged the burden of proof imposed upon it by statute.
The district court found that the engineer and the fireman of the train were not keeping a proper lookout since there was nothing to keep them from seeing the cattle. It was further reasoned that if there was any obstruction, then it was the defendant’s negligence which caused the obstruction in not clearing up its right-of-way, since it was admitted that the weeds- and brush alongside the track were so tall in places as to hide any cow that might be grazing on the right-of-way.
After a careful consideration of the record, we find the ruling of the district court to be contrary to the law and evidence in this case.
The record shows that the cows were found after the accident within the curve,, on the west side of the tracks, at the north side of the cotton oil mill, or several hundred feet into the curve. Because of the growth of the brush and weeds in the area and on the right-of-way, and because of the curve in the tracks to the left, it was impossible for the trainmen to see the cow or cows on the tracks until the train was within 200 to 250 feet of them. The train was traveling approximately twenty-five to thirty miles per hour. The diesel engine was pulling approximately fifteen freight cars, and most of these were loaded. The record shows that it would have required approximately one thousand feet to have brought this train to a stop. To stop within this distance, it would be necessary to throw the train into an emergency stop, with the *84 danger of derailing in a curve. At that time and place, it would have required a few seconds reaction time to effect a full braking of the train in a reasonably safe manner, and this could not be done in time to avoid the animals on the tracks, since they could not be observed until they were within 200 to 250 feet of the train. The only other action available at that time was for the engineer to blow the whistle. The only witnesses to the accident itself were the crew of the train, who testified that the engineer had blown the whistle required for the road crossing, and that when the fireman yelled “Cow”, he gave another blast of the whistle. There was nothing else that could have been done under the circumstances.
Although the engineer did not see the cows, this was because the diesel engine was being driven with the long end to the front, and his view to the left side of the track was hindered. He testified that it was impossible for him to see around a sharp curve to the left from his position on the right side of the cab. This was not negligence under the facts of the case, inasmuch as two other trainmen were seated on the left side and were keeping a lookout.
Under the circumstances of this case, we find that the defendant has proved by a preponderance of the evidence its employees were keeping a reasonable lookout, and that when the cow or cows were first capable of being seen there was no action which could have been taken, other than what was done, to have avoided the killing of the cows.
The next question for consideration is whether or not the defendant was at fault in failing to cut the brush and weeds along its right-of-way. Although it is possible that the facts of a particular case might justify a holding of negligence for failure to cut brush or weeds in a railroad’s right-of-way under LSA-R.S. 45 :- 504, under the facts and circumstances of the case before us on appeal we do not find any negligence on defendant’s part in failing to keep down weeds and brush in the area involved in this case. In the case of Daughdrill v. Texas & New Orleans Railroad Company, supra, the court stated:
“In regard to the second charge of fault on behalf of the defendant, that is, the allowance of weeds to grow to such a height as to hide the mules therein and obstruct the view of the presence of the mules by the employees of the railroad company we find no law in this State which requires railroad companies to keep their right of way free of weeds and obstructions, and the plaintiff has not cited to us any cases so holding. * * * ”
In the case of Moody v. Texas & P. Ry. Co., (La.App., 2 Cir., 1948), 37 So.2d 346, the defendant’s train, consisting of an engine and three passenger cars, was traveling at about 40 miles per hour. The engineer first observed a steer when the train was approximately 300 feet away. Bushes and weeds prevented an earlier discovery of the animal. When the train came to within about 200 feet of the steer, it started across the track and was struck. The court found that it would require one thousand feet to stop the train, and that the defendant railroad was not at fault, but that the killing was unavoidable.
There is no law requiring a train to be operated at such a rate of speed so as to be able to stop within the range of vision of the engineer in all eventualities. Several cases have held that the speed of a train need not be reduced because of inability to stop within the range of vision of the engineer because of rounding a curve, an embankment obscuring the view, or because of rain, fog, smoke, darkness, or other such conditions. Wise v. Texas & P. Ry. Co., (La.App., 2 Cir., 1950), 45 So.2d 368; Abraham v. Texas & P. Ry. Co., (La.App., 2 Cir., 1946), 24 So.2d 886; Edwards v. Thompson, (La.App., 2 Cir., 1941), 2 So.2d 493; Boyd v. Kansas City, Shreveport & Gulf Ry. Co., (La.App., 2 *85 Cir., 1933), 147 So. 100. We think this rule of law would also cover a case such as the one before us on appeal, where the vision of the trainmen was limited because of the curve in the tracks and the growth of weeds and brush on the right-of-way.
Counsel for plaintiff has cited the case of Lafleur v. Texas & Pacific Railway Company, (La.App., 1 Cir., 1959), 116 So. 2d 844. In that case, plaintiff recovered for the loss of three cows struck by the defendant’s train. The cows were struck in open country and in daylight. There was a conflict in the evidence. The engineer testified that he saw the cows at a distance of approximately 300 feet and they were lying down about 40 feet from the tracks. He stated that he was approximately 100 feet from the cows before he anticipated the animals might be struck by the train, and he blew the whistle and put on the brakes, stopping at a point approximately 65 feet beyond the point of impact. However, the court accepted the testimony of two hunters in a field close to the tracks, near the point of the accident, that there were approximately twenty head of cattle on the railroad right-of-way, and the train was going fast and did not slow down until after it hit the cows, although the whistle had blown before the cows were struck. The accident occurred on a straight track in open county. The opinion of the court does not show the speed of the train, however, from the facts shown, it is obvious that there was no obstruction to the view of the engineer and that there was time to stop the train after the cows -were seen.
The facts of the Lafleur case, supra, and those in the case before us on appeal are different in the following particulars. In the instant case, the curve in the tracks and the brush and weeds in the right-of-way prevented the discovery of the cows in time to avoid their injury or death. Also, the testimony of the trainmen as to the facts of the accident, specifically the speed of the freight train, has not been contradicted by any other evidence.
For the reasons assigned, the judgment of the district court is, reversed and set aside, and plaintiff’s suit is dismissed. All costs are assessed against plaintiff.
Reversed.