## JACKSON v. MISSOURI PAC. R. CO.
### No. 4234.

Court of Appeal of Louisiana. Second Circuit.

May 20, 1932.

Hudson, Potts, Bernstein & Sholars, of Monroe, and R. V. Reeves, of Oak Grove, for appellant.

John R. McIntosh, of Oak Grove, for appellee.

PALMER, J.

Plaintiff sues to recover for the value of one mare mule, which he alleged to be $150, and for the value of one Jersey heifer, which he alleged to be $60, and which animals, he avers, were killed by the defendant com-

pany in the careless, negligent, and reckless operations of two of their trains.

Defendant admits that one of its trains killed the mule, but denies that it is responsible therefor. It denies that its train killed the Jersey heifer. It avers that, if plaintiff suffered the damages complained of, it was not through its fault, negligence, or carelessness.

The lower court rendered judgment in favor of plaintiff by awarding him damages in the sum of $90 for the mule, and in the sum of $40 for the Jersey heifer. From that judgment defendant prosecutes this appeal.

■ Plaintiff alleges that the Jersey heifer was killed on September 13, 1930, so, as to that portion of plaintiff's demands, defendant relies entirely upon an objection to the testimony which showed that the animal was killed on a different date. In other words, it appears that, instead of the Jersey heifer being killed on September 13, 1930, it was actually killed on October 13, 1930; so defendant objected to any testimony showing that this animal was killed on any other date than the date alleged. The trial court overruled the objection, and we think correctly so.

Defendant did not object to plaintiff's proof on the ground that it was unprepared to meet it, due to the fact that a different date was sought to be proved on which the animal was killed, than the date alleged in the petition. If such an objection had been urged, it probably would have been the duty of the district judge to postpone the trial until defendant could prepare to meet the changed situation. It appears that defendant had its proof, at least some of it, ready on hand, and could have offered it. Its section foreman in charge of the section where the animal was killed testified on behalf of defendant. His record shows that defendant's train killed this heifer on October 13, 1930. Two of defendant's engineers and firemen, operating trains over this section of defendant's line, testified, but it is not shown that either of them operated the train that killed this heifer. However, the dispatcher testified that the defendant makes two round trips a day on this line, and gave the names of these two engineers and firemen as those in charge of those trains. It seems likely, therefore, that the engineer and fireman actually in charge of the train that killed this animal testified in this case and could have been questioned concerning the killing of this animal, if defendant had any defense to offer.

Defendant therefore had its opportunity to either introduce its proof or, if not prepared, to have requested a postponement of the trial, and, since it did neither, it cannot now be heard to complain. Defendant is clearly liable for the value of the heifer.

As to the mule, it is shown that the railroad track where the mule was killed is straight for a long way in both directions. On the occasion in question, there were a number of mules grazing along the right of way, or upon the highway nearby. Some of them appeared to have been on one side of the track and some on the other. When the train approached the crossing, which is situated some distance back from the place where the mule was killed, the whistle was blown, and' this seems to have disturbed some of the mules, thereby causing them to move around. The mule in question, which seems to have been grazing some seventy-five feet away from the center of the track, attempted to cross to the other side, and, in doing so, the engine collided with him and killed him.

■ While plaintiff has alleged that the mule was killed through the negligence of defendant, yet, under Act No. 70 of the Legislature of Louisiana for the year 1886, all he was required to do was to prove the killing, and then the burden shifted to the defendant to show, if it could, that the killing was not the result of its fault or negligence. The question for the court to determine is whether or not the defendant discharged that burden.

The fireman testified that the mule could be seen about three telephone poles away. He said there are five telephone poles to a quarter of a mile. On this basis of calculation, according to the fireman, the mule could be seen about 800 feet back from the point where the killing occurred. The testimony of other witnesses is to the effect that, the mule could have been seen at a much greater distance, due to the very long straight track at that place.

Defendant failed to show the character of train it was operating at the time, whether it was a passenger or a freight. It did not show how many cars constituted the train, nor did it offer to establish within what distance the train could have been stopped. Several disinterested witnesses for plaintiff said that there were a number of mules on both sides of the track, and that one or more of them crossed from one side to the other, as the train was approaching. The engineer and fireman said the mules along the right of way were on one side of the track only; they saw no mules cross the track in front of the train. Their testimony, however, on this question is not as affirmative as the other witnesses. This indicates that they were not keeping the proper lookout. With as many mules on or along this right of way at this point as the evidence indicates there were, it was the duty of the engineer to have kept a better lookout. Had he done so, we are convinced he could have easily avoided the killing of this mule.

The position of the engineer is that the mule suddenly broke into a run towards the

track, and that he applied the brakes, but could not stop before the animal got to the point of the collision. Defendant contends that they were not at fault when they did not slow down the speed of the train, because there were mules grazing nearby, but that they discharged their full duty when the engineer applied the brakes at the time the mule started running towards the track.

The testimony convinces us that the mules along the right of way became disturbed and excited when the whistle was blown for the crossing, some distance back from the point of the collision, and that the engineer, had he kept a proper lookout, would have observed that situation and should have approached the locality of the mules with caution. If he had followed that procedure, the collision undoubtedly would have been averted.

The district judge found that the defendant did not discharge the burden of showing that the killing was not occasioned through its negligence. We think the testimony fully justifies that finding.

### Quantum of Damages.

We find no evidence in the record to support the value of $90, fixed by the district court on the mule killed. All the testimony shows the mule was worth at least $150. The evidence on the value of the heifer shows that it was worth at least $50.

We think, therefore, that the judgment of the lower court should be amended so as to increase the award for the mule from $90 to $150, and to increase the award for the Jersey heifer from $40 to $50, making a total judgment in favor of plaintiff and against the defendant of $200. This can be done because plaintiff answered the appeal and asked for the increase. As thus amended, the judgment of the lower court is affirmed; appellant to pay all costs of both courts.